Anna Y. Park, SBN 164242
anna.park@eeoc.gov
Sue Noh, SBN 192134
Sue.noh@eeoc.gov
Andrea E. Ringer, SBN 307315
andrea.ringer@eeoc.gov
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone:  (213) 894-1083
Facsimile:  (213) 894-1301

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>              Plaintiff,<br><br>       vs.<br><br>KIMCO STAFFING SERVICES, INC., RYDER INTEGRATED LOGISTICS, INC., and DOES 1-10, inclusive,<br><br>              Defendants. | Case No.:<br><br>**COMPLAINT—CIVIL RIGHTS/EMPLOYMENT DISCRIMINATION**<br><br><br>**JURY TRIAL DEMAND** |

-1-

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race (Black) and retaliation and to provide appropriate relief to Charging Party Regina Fisher ("Charging Party Fisher") and a class of Black employees ("Claimants") that were adversely affected by such practices.  As set forth with greater particularity in paragraphs 3 to 64 of this Complaint, Plaintiff United States Equal Employment Opportunity Commission alleges that Defendant Kimco Staffing Services, Inc. and Defendant Ryder Integrated Logistics, Inc. (collectively "Defendants"), unlawfully subjected Charging Party Fisher and Claimants to harassment resulting in a hostile work environment based on their race (Black), disparate treatment based on their race (Black), discriminatory discharge based on race, and/or retaliation for opposing unlawful employment practices in violation of Title VII.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Central District of California.

## PARTIES

3.      Plaintiff United States Equal Employment Opportunity Commission ("Plaintiff", "EEOC" or "the Commission") is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of

Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4.      Defendant Kimco Staffing Services, Inc. ("Defendant Kimco" or "Kimco") recruits persons to provide services to other employers in a temporary or permanent capacity and jointly employs those persons, providing ongoing supervision, human resources, payroll and other services. Since at least 2016, Kimco placed employees to work for Defendant Ryder at the distribution facility/warehouse located at 25300 Globe Street, Moreno Valley, California ("the Globe Facility"). Kimco management and/or human resources representatives also worked out of the same facility.

5.      At all relevant times, Defendant Kimco has continuously been an "employer" engaging in an industry affecting commerce and an "employment agency" under Sections 701 (b), (c), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (c), (g), and (h), with offices in California, Nevada and Arizona.

6.      At all relevant times, Defendant Kimco has continuously been a corporation doing business in the State of California and the County of Riverside and has continuously had at least 15 employees.

7.      At all relevant times, Defendant Kimco jointly employed Charging Party Fisher and a class of Black employees.

8.      Defendant Ryder Integrated Logistics, Inc. ("Defendant Ryder" or "Ryder") provides commercial third-party logistics and freight transportation services. Defendant Ryder operates as a subsidiary of Ryder System, Inc. It operates nationwide, including at the Globe Facility.

9.      At all relevant times, Defendant Ryder has continuously been a corporation doing business in the State of California and has continuously had at least 15 employees.

10.     At all relevant times, Defendant Ryder has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

11.    At all relevant times, Defendant Ryder employed both temporary and/or temporary-to-permanent employees placed from Kimco as well as their own, direct employees.

12.    At all relevant times, Defendant Ryder jointly employed Charging Party Fisher and a class of Black employees.

13.    At all relevant times, Defendants shared control over the terms and conditions of employment of Charging Party Fisher and the Claimants assigned to work at the Globe Facility by Kimco.

14.    At the Globe Facility, there was always a Kimco and Ryder manager and/or human resources representative on-site. Defendants jointly supervised the daily work of Charging Party Fisher and Claimants, reviewed their job performance, recommended and/or took employment actions, such as discipline, promotion, and termination of employment, set their hours of work and work schedules, and determined their pay rate. Charging Party Fisher and Claimants worked in the Globe Facility using materials owned by Defendant Ryder and performed work that was an integral part of Ryder's principal business.

15.    All acts and failures to act alleged herein were duly performed by and attributable to all Defendants, each acting as a successor, agent, alter ego, employee, indirect employer, joint employer, integrated enterprise, or under the direction and control of the others, except as specifically alleged otherwise.  Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved, and/or ratified the unlawful acts and omissions by the other Defendants complained of herein.  Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

16.    Plaintiff is ignorant of the true names and capacities of each defendant sued as DOES 1 through 10, inclusively, and therefore Plaintiff sues said

defendants by fictitious names. Plaintiff reserves the right to amend the complaint to name each DOE defendant individually or corporately as it becomes known. Plaintiff alleges that each DOE defendant was in some manner responsible for the acts and omissions alleged herein and Plaintiff will amend the complaint to allege such responsibility when the same shall have been ascertained by Plaintiff.

<u>**STATEMENT OF CLAIMS**</u>

17.    More than thirty days prior to the institution of this lawsuit, Charging Party Regina Fisher filed a Charge of Discrimination with the Commission alleging violations of Title VII by Defendant Ryder against Charging Party Fisher and a class of Black employees.

18.    More than thirty days prior to the institution of this lawsuit, Charging Party Regina Fisher filed a Charge of Discrimination with the Commission alleging violations of Title VII by Defendant Kimco against Charging Party Fisher and a class of Black employees.

19.    Subsequent to the charge of discrimination, the Commission investigated Charging Party Fisher's allegations against Defendant Kimco's employment practices.

20.    Subsequent to the charge of discrimination, the Commission investigated Charging Party Fisher's allegations against Defendant Ryder's employment practices.

21.    On September 12, 2018, the Commission issued to Defendants Letters of Determination finding reasonable cause to believe that Defendants subjected Charging Party and a class of Black employees to harassment and discrimination based on race (Black) and retaliation, in violation of Title VII.  The Commission further invited Defendants to join with it in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

22.    The Commission engaged in communications with Defendants to provide Defendants the opportunity to remedy the discriminatory practices

described in the Letters of Determination.

23.     The Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission. On July 15, 2019, the Commission issued to Defendants a Notice of Failure of Conciliation advising as much.

24.     All conditions precedent to the institution of this lawsuit have been fulfilled.

<u>Statement of Title VII Claims</u>

25.     Since at least 2016, Defendants engaged in unlawful employment practices in violation of Sections 703(a) and 704 of Title VII, 42 U.S.C. §§ 2000e-2(a), (b), 2000e-3, by subjecting Charging Party Fisher and Claimants to race-based harassment, discrimination, and retaliation.  The unlawful employment practices include but are not limited to those practices described in paragraphs 26 to 64 below.

26.     In August 2015, Charging Party Regina Fisher ("Charging Party Fisher" or "Ms. Fisher") began her employment with Defendants working on the assembly line at the Globe Facility.

27.     The Claimants include both Black employees placed by Kimco to work for Ryder as temporary or temporary-to-permanent employees at the Globe Facility and Black employees hired directly by Ryder to work at the Globe Facility.

28.     Charging Party Fisher and Claimants worked in low or no-skill positions doing package assembly on a production line.

29.     Kimco and Ryder management supervised Charging Party Fisher and other employees, including Claimants, at the Globe Facility.

30.     Kimco and Ryder employees and managers at the Globe Facility were predominantly Hispanic.

31.     Charging Party Fisher and Claimants identify as Black.

32.     In February 2016, Defendants promoted Charging Party Fisher from Assembler to Quality Auditor.

33.     Since at least 2016, Defendants' non-Black employees subjected Charging Party Fisher and Claimants to ongoing and unwelcome severe and/or pervasive race-based harassment by referring to Charging Party Fisher and/or Claimants using racial slurs and epithets on daily or weekly basis at the Globe Facility.

34.     Starting on or about February 2016 until Charging Party Fisher's termination in October 2016, at least seven of Defendants' non-Black employees regularly referred to Charging Party Fisher using terms that include but are not limited to "Negra Fea", "Aunt Jemima," "the woman on the maple syrup bottle," "a token black slave," and/or "cocina." These terms were offensive and directed at Charging Party Fisher and other Black employees to create a hostile work environment based on race (Black).

35.     Defendants' non-Black employees also referred to Claimants on a daily basis using racial slurs and epithets such as "mayate," "Negra Fea", and "yanta." Defendants' non-Black employees also called Claimants "black girl" or "black boy" and said that persons identifying as Black were "lazy" and "don't like to work."   These terms were offensive and directed at Claimants to create a hostile work environment based on race (Black).

36.     Since at least 2016, racial slurs and epithets have been used frequently and openly by non-Black employees, within the earshot of Black employees throughout the Globe Facility. Such comments were unwelcome and adversely impacted Claimants.

37.     The employees referring to Charging Party Fisher and Claimants using racial slurs and epithets include both employees placed by Kimco to work for Ryder as temporary or temporary-to-permanent employees at the Globe Facility and employees hired directly by Ryder to work at the Globe Facility.

38.     The harassment was unwelcome and sufficiently severe and/or pervasive to alter the conditions of employment for Charging Party Fisher and Claimants and create an abusive and hostile work environment.

39.     Charging Party Fisher and Claimants perceived the working environment as abusive and hostile. They were humiliated by the harassment, and found it interfered with their daily work. Charging Party Fisher asked to change work shifts as a result and because Respondents had failed to remedy the harassment. A reasonable employee identifying as Black would consider the working environment abusive and hostile.

40.     Defendants knew or should have known of the race-based harassment of Charging Party Fisher and Claimants because Charging Party Fisher and Claimants were subjected to verbal race-based harassment in the Globe Facility within earshot of Ryder and Kimco management and during work hours. Both Ryder and Kimco had more than one manager and/or human resources representative assigned to the Globe Facility.

41.     Defendants knew or should have known of the race-based harassment of Charging Party Fisher and Claimants because Charging Party Fisher and/or Claimants objected to the harassing conduct by complaining about the race harassment to Kimco and Ryder managers and/or human resources representatives.

42.     In March 2016, Charging Party Fisher complained to Defendants about race-based harassment by Defendants' non-Black employees.

43.     Between March 2016 and her termination in October 2016, Charging Party Fisher engaged in protected activity by verbally complaining numerous times about race-based harassment to both Kimco and Ryder managers and/or human resources representatives.

44.     Notwithstanding the myriad complaints made by Charging Party Fisher, Defendants failed to take prompt, effective remedial action reasonably calculated to end the harassment.

45.     Defendants' failure to take prompt, effective remedial action included, but was not limited to, failing to document Charging Party Fisher's complaints, failing to contact their Human Resources departments, failing to investigate her allegations, and/or failing to discipline the offending harassers.

46.     Defendants did not take Charging Party Fisher's complaints seriously, dismissing her allegations as "gossip" and harmless "name calling."

47.     As a result of Defendants' failure to take seriously Charging Party Fisher's complaints, the race-based harassment continued unabated.

48.     The harassment was sufficiently severe and/or pervasive to alter the terms and conditions of Charging Party's and Claimants' employment and create a hostile work environment.

49.     In September 2016, Charging Party Fisher interviewed for a temporary-to-permanent position with Defendant Ryder and Defendants selected Charging Party Fisher for the position.

50.     In October 2016, Charging Party Fisher engaged in activity protected under federal law by complaining to Ryder management again regarding racial harassment.

51.     A few days after Charging Party Fisher's complaint to Ryder management, Defendants subjected Charging Party Fisher to adverse employment action. Defendants terminated Charging Party Fisher's employment for alleged performance reasons.

52.     Defendants engage in progressive discipline by issuing verbal and/or written discipline prior to termination of employment.

53.     Defendants deviated from the progressive discipline policy by terminating Charging Party Fisher's employment because Charging Party Fisher was never disciplined formally or informally before Defendants terminated her employment.

54.     Defendants followed the progressive discipline policy and issued verbal or written discipline before terminating the employment of similarly situated employees that did not engage in protected activity.

55.     Defendants followed the progressive discipline policy and issued verbal or written discipline before terminating the employment of similarly situated non-Black employees.

56.     Charging Party Fisher and/or Claimants were also subjected to different terms and conditions of employment than non-Black employees, including but not limited to, being denied training that non-Black employees received and was necessary to perform their work duties and being given more physically difficult work assignments than non-Black employees.

57.     In October 2016, after her termination, Charging Party Fisher made a written complaint to Defendant Ryder describing race-based harassment. Following Charging Party Fisher's complaint, several of Defendants' employees confirmed to Ryder that Defendants' non-Black employees referred to Charging Party Fisher and another Black employee using racially offensive terms such as "Aunt Jemima" and "Negra Fea." Ryder Manager Moua also admitted to Ryder she heard that employees were using the term "Aunt Jemima" in the workplace.

58.     Defendants failed to take prompt, effective remedial action reasonably calculated to end the harassment. As a result, the race-based harassment of Claimants continued.

59.     Some Claimants engaged in activity protected under federal law by complaining to Ryder and/or Kimco regarding racial harassment.

60.     In response to complaints of racial harassment by Claimants and other employees, Defendants took retaliatory action against Claimants, including but not limited to, terminating their employment without first issuing a written or verbal warning.

61.     The effect of the practices complained of above has been to deprive Charging Party Fisher and Claimants of equal employment opportunities and otherwise adversely affecting their status as employees because of their race (Black).

62.     The effect of the practices complained of above has been to deprive Charging Party Fisher and Claimants of equal employment opportunities and otherwise adversely affect their status as employees because of their engagement in protected activities in opposition to unlawful employment practices.

63.     The unlawful employment practices complained of above were intentional and caused Charging Party Fisher and Claimants to suffer emotional distress.

64.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Charging Party Fisher and Claimants.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendants, their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practices in violation of Sections 703(a) and (b) and 704(a) of Title VII.

B.      Order Defendants to institute and carry out policies, practices, and programs to ensure that they would not engage in further unlawful practices in violation of Sections 703(a) and (b) and 704(a) of Title VII.

C.      Order Defendants to make whole Charging Party Regina Fisher and Claimants by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to back pay.

D.     Order Defendants to make whole Charging Party Fisher and Claimants by providing compensation for past and future non-pecuniary losses, pursuant to Title VII, resulting from the unlawful practices described above, including but not limited to emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life, in amounts to be determined at trial.

E.     Order Defendants to make whole Charging Party Fisher and Claimants by providing compensation for any past and future pecuniary losses, including, but not limited to, expenses suffered by them that resulted from the unlawful employment practices described above, in amounts to be determined at trial.

F.     Order Defendants to pay Charging Party Fisher and Claimants punitive damages, pursuant to Title VII, for its malicious or reckless conduct as described above, in amounts to be determined at trial.

G.     Grant such further relief as the Court deems necessary and proper in the public interest.

H.     Award the Commission its costs of this action.

///
///
///
///
///
///
///
///
///
///
///
///

1

## JURY TRIAL DEMAND

2

The Commission requests a jury trial on all questions of fact raised by its

3

Complaint.

4

5

Dated:  September 24, 2019          Respectfully Submitted,

6

7

8

SHARON FAST GUSTAFSON,
General Counsel

9

10

JAMES LEE
Deputy General Counsel

11

12

GWENDOLYN YOUNG REAMS,
Associate General Counsel

13

14

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 "M" Street, N.E.
Washington, D.C.  20507

15

16

17

18

19

By:

20

ANNA Y. PARK,
Regional Attorney

21

22

SUE J. NOH,
Supervisory Trial Attorney

23

24

ANDREA E. RINGER
Trial Attorney

25

26

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

27

28